Our next case on calendar is Skyline Wesleyan Church v. CA Dept of Managed Health Care, 18-55451, and in this case each side will have 20 minutes. Skyline Wesleyan Church v. CA Dept of Managed Health Care Before August 2014, Skyline Church had a health insurance plan that accommodated its religious beliefs about abortion, but that abruptly changed when the Department of Managed Health Care rewrote that plan and required immediate coverage of elective abortion. Although the District Court recognized that this resulted in an injury to the Church, it refused to hear the Church's claims because in its view there remained a possibility that the Department might stop enforcing this coverage requirement at some point in the future. But the possibility of a future change in the law does not undo the fact that the Department has already enforced the law and continues to enforce it in a way that has caused the Church injury. And, of course, it is the government's responsibility in the first place not to violate someone's rights. And if it does, Congress has provided a mechanism for seeking a remedy. The injured party may file a lawsuit under Section 1983, and that is what Skyline Church has done here. If I could turn to the District Court's standing analysis first, in looking at the question of standing, I think the question has to begin with the fact that the Church has already been injured, that the Department of Managed Health Care enforced this coverage requirement against the Church. It made it effective immediately. It didn't have to do so. But as a result, it rewrote the Church's plan and caused it to do something that I don't think anyone disputes here actually violated its faith. Can you explain to me the impact of the fact that, and I think this is undisputed, that the Church did not seek an exemption under the path that the letters and other regulations set out, which is to ask a plan to seek an exemption from the coverage requirement? Well, the letter itself does not set out a plan or a path of exemption process. It references no exemption. I understand that. It references the underlying regulations and statutes. Yes, yes. And so one of the first things that the Church did was to go back to its insurer, Aetna, at the time, and this was in October 2014. You can find this at pages 82 and 83 of the record, and asked Aetna whether it had to cover elective abortion and whether there was a religious exemption from that, and Aetna said no. And so that was the response that the Church received from its insurer. And the question as to when the exemption request was asked or the request for exemption was made goes to, I think, a separate question as to who is responsible for stopping the injury. When you're talking about standing and ripeness, we go back to the fact that an injury has already occurred, that the department's already applied the law to the Church in a way that harms it. So to put it in the words of the Supreme Court, as far as ripeness is concerned, the challenge agency action has been formalized and its effects have been felt in a concrete way. We know there was one prior exemption granted, although the argument is made it was not on the same terms that Skyline would have been seeking. That's correct. But I don't understand sufficiently whether that request for an exemption was made through a plan or was made directly by the religious organization. What is your understanding? My understanding is that request was made by Anthem Blue Cross, and it was granted more than a year later after the fact in October 2015. More than a year after the request was made? More than a year after the department applied the August 2014 letter. The initial request, my understanding, was in February 2015. It wasn't until October 2015 that that request was granted. But your client has never asked a plan to submit such a request? Well, I don't need a request itself, as I understand it, and there's an issue about supplementing the record on that. That's true. It did make the request directly to the department, but it went back to Aetna in October 2014 and asked whether a religious exemption was available. And it was the church's view, that's what it was requesting. Can we get a plan that accommodates our religious beliefs? And the insurance company said no, because the letter's requirements were so clear. And again, this is, I think, going to ---- it suggests that the department has gone back to all the health insurance companies and told them that there is an exemption from this abortion coverage requirement. The last communication from the department is the August 2014 letter saying that these sorts of plans are illegal. And I understand the state is making the position that all the health insurance plans know that there's an exemption available, but they can't point to anything in a record where that communication has actually occurred. And in fact, when the director herself was asked at the deposition whether she was even aware of this Anthem Blue Cross plan, the answer was she wasn't aware of it. She didn't even know it happened. So how are the employers, the infected employers, supposed to know? And so this is a problem, but again, I think it's a separate question from standing in rightness, because the injury's already occurred, the law's already been applied in a way that has harmed the church. And this court in particular has addressed some of the very same arguments the district court made with respect to this case-by-case exception process in the Oklahoma Native American Church case that we referenced in our brief. And in that case, it involved the federal government seizing and destroying a package of marijuana that was intended for a Native American church and its religious leader, and even though there was no prosecution or threatened prosecution that came out of that seizure, the church and its leader filed a lawsuit challenging the Controlled Substances Act. And the federal government made the same argument that we're hearing today, saying the Controlled Substances Act contains a process within the statute to submit case-by-case exceptions. And as a result, the claims aren't right because they haven't asked for an exception from the DEA. And this court said, no, that does not destroy rightness. What matters is that the law's already been applied in a way that caused injury to the church. So this isn't a speculative or abstract disagreement. The law applies, it's caused an injury, and we're not going to impose an exhaustion requirement into the law, in that case it was a RFRA claim, when one's not required. One last question, sorry. Is it your view that it was the obligation of the agency head in the letters to say, oh, by the way, under the Knox-Keene Act, there is an ability to seek an exemption and here's how you do it? Yes, and I think we have a different case if the Department would have delayed implementation of this law, not gotten rid of the church's plan and caused it to do something to violate its faith, and provided some sort of mechanism by which the church could seek an exemption. There was a mechanism, it was a separate statute, and my question is, is there an obligation on the part of the Department to say to the plans and the religious employers, oh, by the way, I draw your attention to what has been lawful, extended period and is clearly established and provides the ability to go through an exemption request and here's how that request works? Yes, I think that's true, Your Honor. What the Department can't do is to go and enforce the law in a way that causes injury and then say, well, you haven't asked us to stop enforcing it, so you can't come to court yet. Congress answered that question when it enacted Section 1983 and in Patsy v. Board of Regents, the Supreme Court said that there is no exhaustion requirement for Section 1983 claims, that it's to provide immediate access to the courts, to throw open the doors to the courts to those that are suffering a deprivation of their constitutional rights. And so Congress recognized that to ask injured parties who have been injured by the State's enforcement of the law to then go back to that very same agency that decided to apply the law to them in the first place, decided to inflict that harm and to request, in essence, pretty please, will you stop? Congress said no to that, said you can, it's the judiciary that plays the paramount role in protecting constitutional rights. And do I understand correctly that you think you'd have the ability to argue the merits of your claims because of a nominal damages request, even if the letter had been worded differently and said you can get a request made and we'll consider your request and then three months from now we'll rule on your request, that in the meantime you'd still have this nominal damages claim? Yes, that's correct, because the injury would have occurred, they would have eliminated the plan that the church had, would have caused the church to do something that violates its faith, and so you can't undo that. That damage has already occurred, and a nominal damages claim is an appropriate way to redress past violations of constitutional rights. And is your argument about standing and ripeness the same as to all of your merits claims? Because I was trying to figure out what we should do. We have briefing on the merits of the free exercise claim, but not the others. So are there differences in the claims that would affect this justiciability issue? I don't think so, Your Honor. When you're looking at the free exercise claims under the State or Federal Constitution, in addition to the Establishment Clause, our position is that when the department enacted this abortion coverage requirement or implemented it, it did so in a way that harmed Skyline Church and injured its rights. And in fact, it was targeting religious groups. It did it through a law that is not generally applicable, so we get the strict scrutiny under the free exercise claim. So I don't see any difference in the substance of the claims that would affect our standing and ripeness arguments. On the merits then, so you think that you get strict scrutiny. Can you talk about why you think that? Yes. Yes, Your Honor. So under Supreme Court precedent, as I'm sure Your Honor is aware, the first question that this Court needs to address is, do we apply strict scrutiny on a rational basis? And the question under Smith is, is the law neutral and generally applicable? And the easiest way for this Court to get the strict scrutiny is to look at the law that they're enforcing, because of this theoretical possibility of an exception? Not just that, Your Honor. It's the fact that there are exemptions written into the Knox-Keene Act itself that exempt certain educational institutions, plans that are operated by educational institutions, plans that are directly administered by small employers. So those three categories, educational institutions, the self-funded, the five or fewer employees, aren't those just totally different kinds of employers? So basically there's a generally applicable neutral law as to most big employers in the state? I don't understand how carving out a few kind of odd types of employers makes this not generally applicable or not neutral. I don't disagree that they're different employers, but when you're asking whether a law is generally applicable, what the Supreme Court has instructed is you look at the interests that the government is advancing. So is it pursuing its interests even-handedly? And the interests that the state asserts here is the requirement that health plans cover basic health care services and in turn cover elective abortions. And that is not a requirement for those plans. Those plans don't have to provide coverage for basic health care services or elective abortions. But isn't, so don't we worry about things not being neutral or generally applicable because we worry that there's some kind of, there might be avenues for animus to play out because it's not neutral and generally applicable to everyone? And can you point us to anything here that shows that the reason educational institutions are exempted and you aren't is animus? I don't think to establish a free exercise claim, Your Honor, that we have to establish intentional invidious religious discrimination. There would be virtually no free exercise claims if that were the case, because all it would take is a savvy government agency or government body to figure out a way not to disclose that. And so as a good example, I would point to the Third Circuit's decision in Fraternal Order of Police or the Eleventh Circuit's decision in Midrash Shepardi, which talks about general applicability, where there's exemptions that are written into the law that clearly undermine the state's asserted interest. Strict scrutiny applies because there's a devaluing. There's a valuing of secular interest in granting those exemptions, and there's a devaluing of religious interest. But aren't those exemptions, I'm not sure I remember the exact details of those cases, but aren't they where the exemptions turn on religion or not? And here these differences do not turn on religion or not. With the exemptions that are written into the law? In the Third Circuit and Eleventh Circuit cases. I mean, weren't those distinctions about religion? And here that's not what we have, as far as I can tell. Well, so in the Fraternal Order of Police case, my recollection of that case is that the exemption that triggered strict scrutiny was the fact that they allowed, dealt with a beard requirement for police officers, and they allowed beards for, I believe it was medical reasons. And so then Justice, Judge Alito said that allowing an exemption for medical reasons, but to not allow someone to have a beard for religious reasons, is valuing a secular reason over a religious one, and that's sufficient to trigger strict scrutiny. What would be the analogy here? I don't understand how universities and people with, employers with five or fewer employees is analogous to this, we'll let you have a health reason, but not a religious reason. I don't see the analogy there. Well, it's saying that, let's take a small employer, saying we don't, there are sufficient reasons that we're not going to require a small employer to cover basic health care services or cover elective abortions. There are secular reasons for that. And it may be it's too onerous for the employer. We'd have to hear from the State as to what the reasons are for that. But they would be secular as to why they're exempting them from that process. And then to not give an exemption to the church is to say that the religious reason for the exemption isn't as valuable or worthwhile as the secular reasons. But we've done that in, for example, the Storman's case, in which there were valid secular reasons for exempting the obligation of a pharmacy owner to deliver a prescription if the client couldn't pay for it. Or if there was a reason to suspect it was a fraudulent request. So, I mean, the fact that it is a secular reason and the reason that you have pointed to as religious doesn't make it improper to have the secular exemption. It doesn't indicate religious animus in the fact that you don't have a similarly expansive religious exemption. Well, in Storman's, the exemptions there, this Court said, were specifically tied to or tethered to the particular interests that were being pursued. So those exemptions didn't undermine the State's asserted interest. They supported the State's interest, which was to provide immediate and quick access to and safe access to contraceptives. And all the exemptions there didn't undermine that. Who could argue with the fact that you have a fraudulent prescription? Of course a pharmacy doesn't have to fill a fraudulent prescription. The difference here is the exemptions that are written into the law and also the individualized exemptions that the Director has under the statute, which is to allow any exemption for good cause or in the public interest, those are not nearly as tightly tied to the asserted interest. They're not tied to the asserted interest at all. And that's the difference. If I may reserve the remainder of my time for rebuttal. Thank you. Good morning. May it please the Court. Carly Eisenberg on behalf of the California Department of Managed Health Care and its Director. Your Honors, under California law, licensed health plans have to provide basic health care services. And as the California Court of Appeal recently confirmed in the case of the District Court, it does not include lawful abortion. When the Director realized that she inadvertently approved health plan products that contained unlawful provisions, she reminded those noncompliant plans of their obligation to comply with pre-existing California law. This Court should affirm the District Court's judgment for two reasons. First, plaintiff's claim is not ripe for review. And second, plaintiff lacks standing. What would they have to do to achieve ripeness? Now, here, plaintiff's claim is their free exercise claim that turns not just on issuance of the letters, but turns on subsequent events after the letters were issued, including the exemption process. And so asking the Court to weigh in to an exemption process, a process that plaintiff itself hasn't gone through because it can't, because it's not regulated, but nor has a health plan on their behalf, is wading into exactly the type of constitutional analysis that the Supreme Court has cautioned against. And prudential concerns require the Court to look at three factors for fitness for review, whether the issue is purely legal, whether the Court would, consideration would benefit from a fuller record, and whether the agency action is sufficiently concrete. And plaintiff can't meet any of those prongs. Plaintiff's own brief demonstrates that this is not a purely legal question. It's a factual question that involves not just the... And does the free exercise clause protect us or not? Why is that not a legal question that we can understand at this point? Your Honor, plaintiff's argument, for instance, that the letters are not neutral, turns on four discrete factual scenarios. They draw on a number of facts, including the fact that the, what happened before the letters issued with regard to Santa Clara and Loyola, what happened in terms of stakeholder meetings, what happened in terms of the effect of their letters on religious employers and on the exemption process. So it's a very fact-specific inquiry. Indeed, this Court in Stormont said that the free exercise clause analysis is, in fact, fact-specific. Well, I'm not sure I understand the answer to Judge Rosenthal's question as to what would they have to do in order to make this right. And give them standing, because they're so closely related. And standing. Right. Chief Judge Rosenthal, I'm sorry if I didn't answer that. They would have to find a health plan that would go through the exemption process. Bearing in mind there's 78 licensed health plans through the Department of Managed Health Care. So they have a variety of options. And to date, they've not adduced any evidence, nor is there any in the indictments doctrine additional force when the Federal Court is reviewing a State agency decision at an interim stage in an evolving process. Well, how do you respond to the problem that they raise that if they were required to go back, find an insurer willing to approach the Department and say, please give us this exemption, broader than any previously granted, that's how many-year process, and then they have to reappeal, go through the litigation delay. And all throughout that period, their religious beliefs are being offended. How do you respond to that? That seems to me to be a good harm. So turning to the hardship part of the Ripeness Inquiry, plaintiff does have to demonstrate that some of the examples given in U.S. West are a Hobson's choice of complying with the invalid regulation of violation or in order to challenge the law. And so, but those are for entities that are directly regulated by the regulation. And here, a plaintiff is not directly regulated. It's a non-regulated party. It's a very powerful indirect regulation, however. But they have alternatives. The records replete with options for them. They have arguments as to why none of those alternatives is acceptable to them. Right. And their response is that it's not financially viable, but that alone is not enough to establish hardship for purposes of the Ripeness Inquiry. But even if this Court — what case tells us that? I mean, if they really can't afford to cover insurance for their employees on a self-insured plan — Decent insurance. Or, you know, give reasonable insurance in an affordable way, and their only other option is the State plan — State-approved plans that have this problem for their religious beliefs, what case tells us that that financial hit that they would have to take and the lack of insurance they'd be able to provide isn't enough of a harm to give them an injury? I think the Caldwell v. the Ninth Circuit case, there the claim was pressing a First Amendment claim, and there the Court said that money and altered conduct was insufficient to overcome the uncertainty of the legal issue, that there was ambiguity in the record, and therefore reaching — Well, so I guess this gets to a fundamental question I have about your position. So it seems like you're arguing they can't be here because if they had asked in a different way for an exemption, maybe they would have gotten it, and so that means this whole case goes away. But you're litigating this case, and if you wanted to give them an exemption, you could have just done it instead of spending lots of time writing I don't understand why we should think that they really have a chance of getting an exemption when you've been fighting this tooth and nail. Your Honor, the Department only has regulatory and jurisdictional authority over a licensed health plan. They have no authority over employers or indirect consumers. And the Director of the — But the letter did not say religious groups are exempt from this. If you wanted to get out of this, you could write that in the letter if that was really your intent. But that seems to not be really, and I think maybe that's totally legitimate if we get to the merits. But as to your jurisdictional argument, there's like this tension I don't understand. Your Honor, plaintiffs — you asked, was there any requirement in law that the Department notify health plans of the exemption process? And plaintiff didn't provide you with any authority because none exists. And furthermore — But they get this letter. I mean, the insurance — the insurance companies were giving them the insurance they wanted before. They get a letter that says you have to stop doing that. And it doesn't say anything about exceptions, and it doesn't say anything about an appeal process, and it doesn't say anything about how you can ask for any kind of different rule than the rule that's on the face of the letter. So why — and then the insurance cancels their insurance, the one that they wanted. So why is that not the agency's letter writing a rule for State law that says no exceptions, this is what all the plans have to do, and you're out of luck? Well, Your Honor, I think that brings me to the standing inquiry because it wasn't the Department writing what the State law was. State law already requires the Knox-Keene Act, the Reproductive Privacy Act, and the California Constitution. All State law provisions that plaintiff itself does not challenge. They only challenge the letters. And the California Court of Appeal recently confirmed that the letters restated what was required by California law. Okay, so now they're challenging California law. And they have an injury. And why can't we resolve whether California law can do this? I mean, you might win. You know, don't you want to know whether it's okay, whether California is doing something constitutional or not? Well, Your Honor, I would pause. We filed a 28-J letter alerting this Court to the missionary Guadalupe Pena's decision. In response, plaintiffs said that that was a nonbinding decision on this Court. And that is incorrect. Okay. So say we agree. And we say, yes, this is what California law requires. So now we've got a lawsuit where they're challenging whether they have a religious right to object to what California law requires. And we can figure out whether it's generally applicable and neutral and resolve it as on the merits. But instead, you're trying to tell us not to resolve it. And I just don't understand why that's helpful to anyone. Well, just two things. One more point on the State law. Ninth Circuit case law says that Federal courts are obligated to follow the decisions of the State intermediate appellate courts where there's no convincing evidence that the State Supreme Court would decide differently. So to be clear, there's no flexibility on the missionary Guadalupe Pena's decision. But I also think the problem that plaintiffs think they agree with you about that, I think. I mean, everyone is saying this is California law. They say they don't want it to apply to them. But I don't think anyone differs on whether this is what California law requires, right? But I think that the problem comes in in terms of standing. And we cite several cases for this proposition in our brief. The Rene V. Geer case, the White v. U.S. and the Takar case, Judge Schroeder, your decision. And in each of those cases where the plaintiffs challenged not the underlying law but something else that wasn't the cause of their injury, then that provided a – it was a problem both in terms of causation and in terms of redressability. So, for instance, the White case, the plaintiffs there challenged a Federal law prohibiting cockfighting, but then didn't challenge any of the 50 State laws that prohibited cockfighting. And so the Court said plaintiffs' economic injuries due to the Act's restrictions are not traceable only to the Federal Act, nor would invalidation of the Federal Act redress plaintiffs' injuries because the State bans on cockfighting would remain in place. But there are two sovereigns there, and here we only have one sovereign. I mean, the letter is implementing State law, so why can't – I mean, we could construe their argument to be the letters and the law that it cites instead of just the letter. I don't see how that gets you anywhere, really. Well, because plaintiff has made clear in ER-411 that they're bringing an as-applied claim and have also made clear from the very beginning that they're not challenging the underlying law. They're only challenging the letters. Well, they're challenging whatever aspect of State law requires abortion to be covered by insurers. Including the unfettered discretion on the part of the Director to decide whether or not to grant an exemption. That seems to me to be very much part of what they are challenging. So even if they were to overcome this causation problem, I still think there's a redressability problem because they are not the directly regulated entity. And bearing in mind, we're at the motion for summary judgment stage. But don't we know that Aetna would have given them this plan because it did before? No, Your Honor, absolutely not. It is the plaintiff's burden at this stage to establish. The Supreme Court has said that the nature and extent of facts that must be averted summary judgment depends considerably upon whether a plaintiff is himself the object of the action. When a third party is involved, much more is excluded. It's clearly the object of the action. I mean, it's the object of the action in the sense that the purpose of the action is to prevent religious employers from denying their employees coverage for certain exemptions. And they do that through plans, but it is the impact is on them and their employees. Your Honor, the record doesn't reflect that at all. The record reflects repeatedly that the DMHC didn't even know who the consumers  That would be impacted by this. The licensed health plans are not required to provide that information to the plans. ER 174, 171 to 172. But they certainly knew the categories and types of institutions that might be affected. I mean, that was the genesis from the records that you cite of the reason that the director reexamined the question in the first place. No. So you're saying that because Catholic universities were or Catholic entities were being given exemptions. Your Honor, the record is very clear that the department had no idea who all the consumers were that were provided these particular plans. They had no way of knowing that. And what they did was they did conduct a survey of those plans that were noncompliant. It was a voluntary survey. Not all of the plans got back to them. Anthem Blue Cross did not get back to them. What they learned from that was that 28,947 individuals were enrolled in plans with unlawful restrictions. But only 1,392 were with a religious employer. And so there's no evidence that demonstrates that the department knew that every single plan was going to a religious employer. To the contrary. Doesn't that show that this is a neutral and generally applicable law? I'm not sure why you're making this argument. Yes, it does. Just in response to that notion that the department knew and was targeting religions, I think that the evidence is to the contrary. That they did not know who was being impacted. But whether or not they were targeting religious groups, religious groups have an injury because if they have a belief that contradicts the state law rule that is embodied in these letters. So to the extent, Your Honor, saying that the injury is what took place on the letters were issued because the plans changed. Well, that's when they stopped being able to have the kind of insurance they wanted. Right. And I think that what the district court was explaining is that in looking, this is getting back to ripeness, but the court has to look at the claim being presented. And the claim here doesn't just turn on what happened up to an issuance of the letters. It takes into account all the subsequent events. And that's why the district court said, Your claim doesn't just turn on the number of other facts about an exemption process which no licensed health plan has gone through on your behalf. And when it comes to redressability, this, too, becomes a problem because the plaintiffs have the burden of demonstrating at summary judgment that it would personally be, it would personally would benefit in a tangible way from the court's intervention. Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into Federal court. So, so we may agree with you on the merits. So we might not do this. But if we were to disagree with you on the merits and on standing, couldn't we, in theory, order you to make clear that religious objectors can get an exemption and to tell all the plans that they can offer plans like they used to offer? And don't, isn't it very reasonable to assume that if you did that, they would be able to go back to having their old plan that they had with Aetna because Aetna seemed perfectly happy to give them that plan? The evidence demonstrates that the department did communicate with plans that they could seek an exemption. Now, they didn't issue a letter. They didn't do it in precisely the manner that plaintiff wishes that they did. But the evidence demonstrates that DMHC talks on a daily basis with health plans and communicated with them over the phone that this exemption process was available. But Judge Friedland also asked, if I may, a broader question, which was if we ordered the, if we found both standing and ruled on the merits adverse to you, and the result was an order that the department has to allow plans to offer the same type of coverage that they did before, that they could not require religious organizations, employers, to, or plans to deny elective abortion coverage to religious employers, isn't that an answer to your redressability problem? No, Your Honor, because it assumes that a health plan, that's the actual regulated entity, will take up that ask and that call by the court. And it's the plaintiff's burden at summary judgment. What you have missing here, Your Honor, is what — How can we ignore the fact that they had this plan from Aetna before? So I actually think that it's a different plan. What they had before were these, this is very in the weeds on the facts, but what they had before was a plan that excluded, quote, voluntary abortions or, quote, elective abortions. Now, part of the problem with those previous plans was that those terms weren't defined. What plaintiff is speaking now is a different and much more specific plan. It's not a plan that has, quote, voluntary and elective exclusions, but one that excludes abortion in all instances, including rape and incest. And so that is different. But that goes to whether they would, whether the Department would likely grant an exemption if one was properly sought. And it may, and it goes on the merits as well. But my question to you, again, goes back to Judge Friedland's question. How does that undermine ripeness? It undermines ripeness because the plaintiff has to show that a favorable decision would result in a change in a legal status that would amount to a significant increase in the likelihood that the plaintiff would obtain the relief that's directly implicated. And here, where we're talking about a market participant, plaintiff itself stated that they look primarily at cost and coverage. And in a market context, San Diego County gun rights versus Reno explains that you can't anticipate how a regulated NED would respond, that when it comes, when an injury occurs within a market, the concepts of causation and redressability become particularly nebulous and subject to contradictory and frequently unproven analysis. And so there's no telling that a health plan in response to this decides to raise their rates and take out coverage, thereby upsetting precisely what plaintiffs are seeking in the first place. And so ‑‑ Because it's so hard to figure out whether someone was raped or not? I mean, what would be the reason that the insurer would treat this differently than what they were doing before? I'm sorry, I'm not ‑‑ I'm just trying to figure out, I mean, you need to have some economic reason why you think Aetna would not, now that they understand better, maybe, than they understood before, why Aetna would treat it differently. I mean, is it more expensive to provide fewer abortions? Well, they're asking for a plan that provides for less abortions. And abortions are cheaper than carrying a pregnancy to term. So one could say, well, now under your plan, you're going to have your enrollees, more of them will carry their pregnancy to term because they don't have the option of abortion. That will lead to dependency coverage. And so that becomes much more expensive, so we're going to raise our rates. And at the end of the day, Your Honors, first, before I forget, Chief Judge, there's nothing in the ‑‑ the director was deposed, and she was asked specifically, would you approve this plan? And she said under oath that she would, or she would consider it, she would look at her, talk to her attorneys about it. You mean the exemption? Yes. That she would need to look at the plan documents. And so just to be clear, that is an open question that remains. But ‑‑ Okay. I'm sorry. I just ‑‑ your time is running out, and this is all very interesting. But I'm ‑‑ your adversary did argue the merits here about the infringement of pre‑exercise rights, and I wish you would just address that briefly. Yes, Your Honor. So we would suggest that the Court should remand. And the Storman's case itself remanded for the ‑‑ so that it could be addressed in the first instance when it hadn't been addressed by the district court. So we would suggest the Court do that. It being the exemptions? It being the cause of action. The merits. The merits. The district court didn't look at the pre‑exercise clause. And so overwhelming authority suggests that that is the proper recourse would be to remand. But even if this Court were to reach the merits, just briefly, the plaintiff has not shown that the object or purpose of the department's conduct was to suppress religion. This Court looks for neutrality at facial neutrality and operational neutrality. And plaintiff cannot satisfy either burden. Facially, there's no question that there's ‑‑ it was neutral. Operationally, what the facts, the very specific facts that they're citing to simply do not rise to the level of demonstrating that they don't operate neutrally. But does that mean that we do not apply strict scrutiny? Yes, Your Honor. So how do we ‑‑ how does this pass rational basis? So it passes rational basis because under Stormins, to invalidate a law reviewed under rational basis, the burden is on the one attacking the legislative arrangement to negate every conceivable basis which might support it. Here we have the California Court of Appeal decision that says that the letters were stated what was required by law. At the end of the day ‑‑ may I briefly? Go ahead. At the end of the day, what happened here was that an issue arose that the department had never seen before. And it came to its attention from both media outlets and from consumer complaints. Gary Baldwin testified he'd been with the department for 12 years. And this issue had simply never come up. And so when they looked at the law, they realized that they had inadvertently approved unlawful products. And they did what they were supposed to. They issued letters that restated what was already required by law. So I have ‑‑ it's okay. If we keep asking you questions, you can stay there. So I think there's just this fundamental tension between your merits argument and your ripeness in standing argument. Because when you say we were ‑‑ we had these unlawful products, we didn't realize we had them, doesn't that suggest that you're not going to grant the exception that they want? No, Your Honor. I actually think that the evidence demonstrates by virtue of the fact that they have granted an exemption, after the letters issued, Blue Cross came forward and said we ‑‑ some of our consumers, who the department didn't know, but are religious employers, and they would like products that exclude abortion coverage in these instances. Will you grant it? And the department looked ‑‑ the director looked at her authority under health and safety code 1343A, 1343. But I don't know if the director really did, because the director didn't even know this had happened, right? Someone else did under her authority or something. Right. But it was granted. I mean, that's the point, is that it was granted. And the director was asked during a deposition, would you consider this? Would you perhaps grant it? And she said that she would, in fact, consider granting it. But she can't talk in hypotheticals. And this is where the district court, I think, got it absolutely right, that just because the department didn't blindly agree to approve a health plan product that she had never seen before demonstrates some kind of animus, when she, in fact, had already granted the one and only religious exemption request she had received. Can I ask one question, if you don't mind? Of course. So we have discretion, if we find standing and ripeness and overcome those limitations, what is your best argument for requiring us to send this back or to resolve the issues here? What is your best argument for requiring us to send this back or suggesting that that's where the better, that it's the better course? Right. I think the Stormins case, which we've all talked about because it's very analogous, there at page 1137-38 said that the district court had not yet had the opportunity to analyze or to make appropriate the factual findings as to whether the new, well, there it was, the new rules were rationally related to a legitimate government purpose. It must be determined by the district court in the first instance. Has the record below? Well, first of all, it is a legal question. Correct? There is a legal question here. There is a legal question tied with quite a number of facts. Well, yes, of course, they're always tied to facts, but has the record below as to those facts been fully developed? And my district judge hat says, are there really disputed facts here? We know what would happen. We know what everything says. We know what the documents say. We know what the director has and hasn't done. The only thing that it's not disputed, but it is perhaps incomplete as to whether a differently presented exemption request would or wouldn't have been granted. But that's sort of an incompleteness argument. There's no disputed fact that or perhaps you can help me here. Is there any dispute that would be material to determining the constitutionality of the California approach? And if there's not, why shouldn't we go ahead and figure it out? I think that this Court has always said that the general rule is that the Court declines to address constitutional claims in the first instance. It's just the default rule. And it's applied in a number of instances. And that allows for a more robust record. It allows the district court to do that. But we have a summary judgment record here already, right? This was the motion for summary judgment. I was just looking back. I mean, the first Storman's decision was a preliminary injunction. So we didn't have a full summary judgment record after Storman's one. I don't really see how it's analogous to Storman's one, because here we do have a summary judgment record. And it's cross motions in which both parties are essentially saying we know enough of the facts. They're all undisputed to seek judgment in our favor. Right. I suppose the one caveat is that I just heard for the first time my colleague on the other side say that the Establishment Clause or the other claims are still at issue. And we've not briefed any of that before, Your Honors. And so it does seem as though, at a minimum, if the Court is going to start going down the merits road, that the parties should in likelihood brief the Establishment Clause before the Court rules on it. Would it be an option, though, to rule on the Free Exercise Clause ourselves and then remand for whatever other claims they still want to pursue? I mean, assuming this Court finds that they have ripeness and standing to pursue all of their particular claims. And do you think there's a difference about the ripeness and standing for the other merits claims? Like, is it all going to rise and fall together on ripeness and standing? Or are there differences claim by claim about how somehow the Establishment Clause would be different than the Free Exercise Clause for ripeness? Well, because plaintiffs only press their Free Exercise Claim, that was the one that we briefed. And so in our argument there is that the plaintiff does have the burden of establishing ripeness and standing for each claim he seeks to press. So on appeal, plaintiff hasn't even pressed his other claims. And so I would assert that we have not even briefed that issue as to the other claims. Thank you, Counsel. Thank you. You have some time for rebuttal. So a few points in rebuttal. The first is that there is an injury here. The Church has standing. The Department applied the law against the Church, got rid of its plan when it didn't have to do so. It made the coverage requirement effective immediately. So that's the first point. As to the questions about redressability, my friend on the other side basically requires what is tantamount to a guarantee that the Church get its old plan back. But she mentioned the gun rights case. I don't know if that was in the brief. So are you familiar with that case? I'm not, Your Honor. I'm afraid I'm not. I mean, in looking at the question of redressability, I would point this Court to Renee V. Duncan, and an opposing counsel mentioned this as well, is all that is required is that there be a change in legal status to make it significantly more likely that the injury will be redressed. I'm just asking because the gun rights case does sound a lot like you have to be absolutely sure an intervening actor does make a difference. So I know that wasn't brief, so I don't expect you to be able to respond to that. Well, again, I think as you look at the Eighth Circuit decision in Wheeling, which is a similar situation where the Eighth Circuit said that it's persuasive evidence, the fact that the challenger had a plan that accommodated its religious beliefs before. And so we do know how insurance companies acted before they were told what they were doing is illegal. That is to provide a plan to the church that accommodated its beliefs. Numerous health insurers in their own business judgment offer these sorts of plans. And it makes sense. I mean, the purpose of insurance companies is to sell insurance policies. How does the insurer figure out whether someone was raped? Like, as an insurer, or whether it's incest. How would you implement one of these plans? Well, so the testimony from the church is that it had an elective abortion exclusion, and that accommodated its religious beliefs, and it'd be satisfied with that. I'd point this court to page 265 of the excerpts of record where there's a plan filing from Anthem Blue Cross that provided the very type of language that there would be no doubt satisfies the church's religious beliefs, and that excludes abortion except when necessary to save the life of the mother. And that was a plan that was approved and being offered before the department said it was illegal. So redressability is satisfied under the proper standard, which would set forth in Rene V. Duncan. Now, a lot of what my friend on the other side talks about is who is responsible for fixing it, or fixing the injury, or stopping the injury. And the department could have put an end to this many years ago. They don't have to wait for an insurance company to come to them. They have the statutory authority to provide an exemption to any class of persons or any class of plan contract. And they're, quite frankly, they're hiding behind the insurance companies here. They could write a letter just like they did in August 2014 telling the insurers that it is no longer illegal to offer these plans to religious employers. And the last thing I'd like to address on is the discussion ---- Would it be enough if they wrote a letter to the insurers saying it is still under California law to offer a plan that excludes elective abortions on the terms you've outlined, but you do have the ability to seek an exemption for that. The requirement is simply to show good cause. And you may do so on behalf of your clients who would be affected by this. Well, the church's injury would still exist. The law would still be enforcing against it. So I don't think it would redress the injury. Would you have standing or would it be ripe if you had not availed yourself through your plan or a plan of that opportunity? Yes, I think so, because it wouldn't have undone what the Department already did. So I see that my time is out. Thank you. Thank you both sides for the very helpful arguments. The case is submitted and we're adjourned for the day. All rise.
judges: Schroeder, Friedland, Rosenthal